Filed 4/17/23  P. v. Hernandez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>VICTOR ALFONSO HERNANDEZ,<br><br>    Defendant and Appellant. | F084020<br><br>(Merced Super. Ct.<br>No. 15CR-00084A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Merced County.  Ronald W. Hansen, Judge.  (Retired Judge of the Merced Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Law Offices of Beles & Beles, Robert J. Beles, and Micah Reyner for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench, and Cameron Goodman, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant and appellant Victor Alfonso Hernandez challenges the denial of his petition to vacate a conviction pursuant to former Penal Code section 1170.95.[1]  We reject his claim and affirm the order.

## BACKGROUND

On April 26, 2016, the Merced County District Attorney filed an information charging defendant Victor Alfonso Hernandez (defendant) and his codefendant, William White, with several crimes.  The information charged defendant with murder (count 1; § 187, subd. (a)) with a personal firearm use enhancement (§§ 12022.53, subd. (b) & 12022.5, subd. (a)); and two counts of home invasion robbery (counts 2–3; §§ 211, 213) with personal firearm use enhancements (§ 12022.53, subd. (b)).  The information further alleged defendant had suffered a prior strike adjudication when he was at least 16 years of age (§§ 667, subd. (d) & 1170.12, subd. (b)).

A jury convicted defendant on all counts and found true each of the weapon enhancements.  In a bifurcated proceeding, the trial court found the prior juvenile adjudication/strike allegation true.

The court sentenced defendant to 35 years four months, plus 60 years to life in prison.  The determinate sentence was comprised of the following:  the upper term of nine years on count two, doubled to 18 years due to the prior strike, plus 10 years for the gun enhancement (§ 12022.53, subd. (b)); two years on count 3, doubled to four years due to the prior strike, plus three years four months for the gun enhancement (§ 12022.53, subd. (b)).  The indeterminate sentence was comprised of 25 years for count 1, doubled to 50 years for the prior strike, plus 10 years for the gun enhancement (§ 12022.53, subd. (b).)

---

[1] All further statutory references are to the Penal Code unless otherwise stated. Appellant filed his petition under former section 1170.95, which was subsequently amended by Senate Bill No. 775 (2020–2021 Reg. Sess.) (Senate Bill 775) and thereafter renumbered to section 1172.6, without substantive change on June 30, 2022.

On direct appeal from the judgment, this court remanded for the trial court to determine whether to exercise its discretion under Senate Bill No. 620 (2017–2018 Reg. Sess.) and otherwise affirmed the judgment. (*People v. Hernandez* (Nov. 17, 2020, F076542) [nonpub opn.].)

On April 13, 2021, defendant filed a petition to vacate his conviction pursuant to former section 1170.95. The court denied the petition on March 3, 2022. Defendant appeals the denial of his petition.

## FACTS

The facts, as found by the superior court, are as follows[2]:

"… Orlando Yepez proposed and formulated the plan for a home invasion robbery of Juan's home. Petitioner was a major participant in the planning. He had his two brothers, Jose and Hugo, enlisted to carry out the robbery. Petitioner was armed with a firearm and entered and used it in committing the robbery. Orlando began to hit Juan, however Juan fought back and appeared to be overcoming Orlando's attack. During the fight between Juan and Orlando, defendant intervened and tried to hit and/or shoot Juan with defendant's gun. Juan and defendant then wrestled for defendant's gun. Petitioner then instructed Jose to stab Juan with a screwdriver. Jose attempted to do so but was unsuccessful. During the struggle between Juan and Petitioner for defendant's firearm, Juan successfully pulled the trigger multiple times to empty the gun. During that process, Petitioner was shot in the leg and Orlando was shot twice and died.

"Petitioner, his brothers, and Orlando were all known to be prone to be violent. They had a violent history. Orlando, Juan, and Petitioner had engaged in robberies of drug dealers who were known to have large amounts of cash. Drug dealers with large amounts of cash are reasonably known to protect themselves, their money, and their

---

[2] The relevant facts are those found by the superior court in the present proceedings on the petition. However, we do note they are consistent with our summary of the facts on direct appeal.

3.

drugs with firearms. Juan was known to have a particularly violent history. Juan and Petitioner had been friends for many years. There were at least three firearms used during the home invasion. White was armed with a rifle, Petitioner with a pistol, and Orlando had a pistol. Four co-conspirators entered the home to rob Juan. The only people in the residence were Juan and his girlfriend. Although Orlando started the fist fight with Juan, Petitioner escalated the violence by intervening and instructing his brother Jose to stab Juan with a screwdriver. During the fight, numerous shots were fired from at least two different firearms. Six 45-caliber shell casings and eight 9-millimeter shell casings were found. Petitioner was found guilty of First-Degree Murder under the Provocative Act Doctrine. The evidence proved beyond a reasonable doubt that defendant committed all of the following provocative acts that led to Juan shooting and killing Orlando: Entering Juan's home with three other armed men to rob Juan; While Orlando was fighting Juan, defendant tried to hit and/or shoot Juan with his gun to subdue Juan; When Juan began to wrestle defendant for defendant's gun, defendant told his brother to stab Juan with a screw driver."

## DISCUSSION

### I. Defendant is not Entitled to a Second Evidentiary Hearing

Defendant contends he is entitled to a second evidentiary hearing because not all provocative-act murders are ineligible for section 1176.2 relief.

*Law*

In 2018, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) was signed into law. "The new law was designed 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Johns* (2020) 50 Cal.App.5th 46, 58.)

"In effect, Senate Bill 1437 is a change to the substantive offense[s] of first and second degree murder, removing the exceptions that had allowed such convictions

4.

despite the absence of malice.  Effective January 1, 2019, Senate Bill 1437 made that change by amending … sections 188 and 189 to restrict the scope of first degree felony murder and eliminate second degree murder based on the natural and probable consequences doctrine.  (Sen. Bill 1437, §§ 2–3.)  As amended, … section 188 directs malice may not 'be imputed to a person based solely on his or her participation in a crime.'  (… § 188, subd. (a)(3).)  Instead, 'to be convicted of murder, a principal in a crime shall act with malice,' except for cases applying the narrowed felony-murder rule in new subdivision (e) of … section 189, under which '[a] participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder *only* if one of the following is proven:  [¶]  (1) The person was the actual killer[;]  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree[;]  [¶]  [or] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of … section 190.2.'  (§ 189, subd. (e).)" (*People v. Johns*, *supra*, 50 Cal.App.5th at pp. 58–59, fn. omitted, italics added in original.)

Senate Bill 1437 also created section 1170.95, which was subsequently amended by Senate Bill 775 and thereafter renumbered to section 1172.6.  Currently, section 1172.6, subdivision (a) provides that "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts" when certain conditions apply.  (§ 1172.6,

subd. (a).)[3]  Among the conditions is a requirement that Senate Bill 1437's changes to sections 188 and 189 must now preclude the petitioner's conviction for first or second degree murder.  (§ 1172.6, subd. (a)(3).)

At the hearing on the petition, the prosecution bears the burden of proving, beyond a reasonable doubt, that the petitioner is "guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019."  (§ 1172.6, subd. (d)(3).)  If the prosecution fails to carry its burden of proof, the court shall vacate the conviction and resentence the petitioner on remaining charges.  (*Ibid*.)

### *Provocative Act Murder*

"Under the provocative act doctrine, when the perpetrator of a crime maliciously commits an act that is likely to result in death, and the victim kills in reasonable response to that act, the perpetrator is guilty of murder."  (*People v. Gonzalez* (2012) 54 Cal.4th 643, 655.)  Thus, "[t]he provocative act doctrine does not define a crime.  [Citation.]  Rather, 'provocative act murder' is a descriptive term referring to a subset of intervening-act homicides in which the defendant's conduct provokes an intermediary's violent response that causes someone's death."  (*Id*. at p. 649, fn. 2.)

The doctrine has two elements:  "that the defendant *personally* harbored the mental state of malice, *and* either the defendant or an accomplice intentionally committed a provocative act that proximately caused an unlawful killing."  (*People v. Gonzalez*, *supra*, 54 Cal.4th at p. 655, italics added.)

---

[3] As originally enacted by Senate Bill 1437, this sentence from former section 1170.95, read:  "A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:"  (Former § 1170.95, subd. (a).)

*Analysis*

Defendant contends he is entitled to a second hearing because some provocative act murders could be eligible for relief under section 1172.6. We disagree.

Once a valid petition has been filed, determining eligibility for relief hinges on a single issue: whether the prosecution proved "beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) Those changes include the mandate that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

However, provocative act murder is not implicated by "the changes to sections 188 or 189 effective January 1, 2019." While the provocative act murder doctrine gets its name from its actus reus element requiring that a defendant or accomplice must have intentionally committed a "provocative act" that proximately caused an unlawful killing, that is not the only element of the doctrine. A murder conviction under the provocative act doctrine *also* requires proof "that the defendant *personally* harbored the mental state of malice." (*People v. Gonzalez*, *supra*, 54 Cal.4th at p. 655, italics added.) Thus, the doctrine does not "impute" malice at all, and certainly does not impute it "based solely on [defendant's] participation in a crime." (§ 188, subd. (a)(3); see *People v. Mancilla* (2021) 67 Cal.App.5th 854, 867–868.)

Defendant insists that Senate Bill 775 changed this analysis because it expanded eligible petitioners to include those who were convicted of murder under any "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a).) But, as explained above, the provocative act murder doctrine is not such an "other theory" because it does not "impute" malice at all. It requires the defendant personally harbor malice, the opposite of imputing malice.

Defendant argues otherwise, but in doing so mischaracterizes provocative act murder. He contends that a provocateur-accomplice's mental state of malice can be

7.

imputed to the nonprovocateur defendant based on the latter's mere participation in the underlying felony during which the provocative act occurred. This is incorrect. That scenario would run afoul of the *requirement* "that the defendant personally harbor[] the mental state of malice." (*People v. Gonzalez, supra*, 54 Cal.4th at p. 655.)

Defendant characterizes *People v. Mejia* (2012) 211 Cal.App.4th 586, as holding that the provocative act doctrine imposes liability vicariously through the act of the accomplice. It is true that the *actus reus* element of provocative act murder could be satisfied vicariously, in that the act could be performed by an accomplice rather than the defendant. But, for present purposes, we are concerned not with the actus reus element but with the mental state element: malice. That element is decidedly *not* vicarious or imputed. Indeed, *Mejia* itself makes this crystal clear, holding that as to the mental state aspect of provocative act murder, "a defendant *cannot* be vicariously liable; he must *personally* possess the requisite mental state of malice aforethought when he either causes the death through his provocative act or aids and abets in the underlying crime the provocateur who causes the death." (*Id.* at p. 603, italics added.)

Consequently, we reject defendant's premise that a nonprovocateur's culpability under the provocative act murder doctrine does not turn on his own mental state.

Defendant briefly asserts that the court should have made findings "with a higher degree of particularity," but does not cite any authority to that effect. Moreover, the only conclusion required to deny relief was that petitioner is guilty of murder or attempted murder beyond a reasonable doubt under California law as amended by the changes to section 188 or 189 made effective January 1, 2019. (§ 1172.6, subd. (d)(3).) No additional particularity is required.

## DISPOSITION

The order is affirmed.

POOCHIGIAN, Acting P. J.

WE CONCUR:


SMITH, J.


SNAUFFER, J.

9.